**CONTINUATION OF APPLICATION FOR SEARCH WARRANT**

I, Geoffrey Yandl, being duly sworn, depose and state that:

**INTRODUCTION**

1.      During my time as an ATF Agent, I have participated in investigations of unlawful firearms possession, use, and trafficking and, among other things, have conducted and participated in interviews and surveillance, the execution of search warrants, debriefings of informants, reviews of reports and firearm records, and have participated in investigations that included the use of informants and undercover investigators. Through my training, education, and experience, I have become familiar with the way illegal guns are possessed, transported, stored, and distributed, the methods of payment for such guns, the laundering of illegal proceeds, and the dialect, language, and coded dialect used by firearms possessors and traffickers. In connection with my duties, I investigate criminal violations of the Federal firearms laws including, but not limited to, possession of firearms by prohibited persons, in violation of 18 U.S.C. § 922(g).

2.      I make this affidavit in support of an application for a search warrant authorizing the collection of a Deoxyribonucleic Acid (DNA) sample for Demetrio FLORES III (FLORES), fully described in Attachments A and B, by collecting oral (buccal) swab samples according to the standard practices and procedures employed by the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) for DNA testing. This affidavit is made in support of an application for a search warrant under Federal Rule of Criminal Procedure 41.

3.     The collection of the DNA samples will be accomplished in a manner that is minimally intrusive and poses no risk of harm. Specifically, I, or another law enforcement official, will obtain FLORES' DNA by inserting a buccal (oral) swab(s) into his mouth and running each swab along the inside of his cheeks and the inside of his lips.

4.     Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that FLORES committed a violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm, on September 27, 2024. Additionally, there is probable cause to believe the requested DNA samples will yield evidence that FLORES engaged in the aforementioned federal crime.

5.     The statements in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

**PROBABLE CAUSE**

6.     Demetrio FLORES III is a 30-year-old male and a resident of Holland, Michigan. FLORES is on supervised release within the Western District of Michigan. He has state felony convictions for Carrying Concealed Weapon, Felony Firearm, Assault with Intent to do Great Bodily Harm less than Murder, Malicious Destruction of Fire/Police Property, and Gang Membership from 2011, and a federal felony conviction of Felon in Possession of a Firearm from 2021.

7.      On April 15, 2024, FLORES was identified as an absconder from Federal Supervised Release in the Western District of Michigan.  A warrant for FLORES' arrest was issued by Chief U.S. District Judge Jarbou.

8.      On September 27, 2024, the U.S. Marshals Fugitive Team located and identified FLORES driving a maroon GMC Terrain SUV with Texas registration BVV9453 in Holland, Michigan.  The registered owner of the vehicle is Jose Morales of Edinburg, Texas.  Deputies conducted a traffic stop on the subject vehicle and arrested FLORES from the driver's seat without incident.  FLORES has tattoos and was wearing clothing consistent with gang membership.  The front seat passenger was identified as 19-year-old Angel Manuel Esquivel.

9.      Deputies observed a pistol in plain view on the floor of the rear passenger seat.  Deputies secured the pistol and found it to be a loaded Smith & Wesson .380 caliber pistol with an obliterated serial number.

10.     Behind the rear passenger seats, in the cargo area, Deputies located a storage tote containing male clothing and documents belonging to FLORES, including photos of FLORES with friends and family and court records in FLORES' name.  Also in the tote was a 9mm pistol and a multipage document identified as "MANIFESTO OF THE ALMIGHTY LATIN KING NATION".  The 9mm pistol was unloaded and identified as a Ruger reported stolen to the Holland Police Department in 2023.  Deputies collected two 9mm fired cartridge cases located outside the windshield resting on the driver's side wiper blade and a cell phone found on the center console of the SUV.

11.     The Smith & Wesson .380 caliber pistol was submitted to the Kalamazoo Department of Public Safety forensic lab for test fire and entry into the National Integrated Ballistic Information Network (NIBIN).   The firearm functioned as designed and the test shots were correlated in NIBIN to a shooting investigation by the Wyoming Police Department.  On July 30, 2024, Wyoming Police responded to a report of gunshots at 1133 Albers Street SW.  Police collected one .380 caliber fired cartridge case (FCC) from the scene.  The FFC was linked to the test shot from the Smith & Wesson pistol found in the vehicle driven by FLORES.  The shooting victims were mostly uncooperative with police but stated the shooting may be gang related. No suspects were identified.  A thorough examination of the obliterated serial number determined it to be KJC7818.  The Smith & Wesson .380 caliber pistol with serial number KJC7818 was reported stolen to the Kent County Sheriff's Office in 2023.

12.     The Ruger 9mm caliber pistol was submitted to the Kalamazoo Department of Public Safety forensic lab for test fire and entry into NIBIN.  The firearm functioned as designed and the test shots were correlated in NIBIN to another shooting investigation by the Wyoming Police Department.  On September 19, 2024, (eight days before the firearm was recovered) Wyoming Police responded to a shooting at an occupied residence, 1151 Hudson Street SW.  The victim's residence and vehicle were damaged by gunfire.  Police recovered thirty-six (36) 9mm FCCs at the scene.  FCCs were linked to the test shots of the Ruger 9mm found in the tote with FLORES' belongings.  Witnesses reported two unknown males dressed in all black had fled the scene of the shooting.  The victims have been cooperative with

police and are attempting to identify suspects.  Additionally, the Ruger 9mm test shots were linked to the two 9mm FCCs found on the windshield of the SUV driven by FLORES.

13.    FLORES is currently detained at the Newaygo County Jail, which is within the Western District of Michigan.

14.    Neither firearm was manufactured in Michigan.

15.    Based on the facts above, there is probable cause to believe that evidence of FLORES' DNA will be found on the Smith & Wesson .380 caliber pistol or its ammunition magazine, the Ruger 9mm pistol or its ammunition magazine, further proving that he unlawfully possessed the firearm.  It is possible to find a person's DNA on firearms and ammunition when they have handled the firearm or ammunition.

## DNA TESTING AND THE COLLECTION OF DNA SAMPLES

16.    Based on my training and experience, including discussions with other law enforcement officers, I know that there are two sources of DNA used in forensic analyses. Nuclear DNA (nDNA) is typically analyzed in evidence containing blood, saliva, body tissue, and hairs that have tissue at their ends. Mitochondrial DNA (mDNA) is typically analyzed in evidence containing naturally shed hairs and hair fragments. When DNA evidence is transferred by direct or secondary (indirect) means, it remains on surfaces by absorption or adherence. In general, liquid biological evidence is absorbed into surfaces and solid biological evidence adheres to an object. Current DNA tests are so sensitive that they can type the DNA found in samples

containing only a few cells. Merely touching an object may leave enough DNA material that a forensic analysis will be able to match the object to the person who touched it.

17.     Buccal swabs provide the least invasive way to conduct DNA testing. A buccal swab is a cotton-tipped applicator that will be used to collect cheek cells from inside a person's mouth. The lab will then extract a person's DNA profile from the buccal swab, which will then be used for comparison purposes to the profile(s), if any, ultimately extracted from swabs collected from other evidence.

18.     I propose to take the DNA samples sought herein in an entirely non-intrusive manner. Specifically, I seek to take "buccal," or cheek swabs from the inside of FLORES' mouth by using cotton-tipped applicators (it is like a Q-tip) to rub the inside of FLORES' cheeks. The buccal swabs take moments, involves no risk to health, "no risk, trauma, or pain," and may be conducted at the County Jail or in any other secure location.

19.     I have been informed by the United States Attorney's Office that it is well settled that the fifth amendment privilege against self-incrimination does not preclude the use of one's body as evidence. Schmerber v. California, 384 U.S. 757, 765 (1985); Wilson v. Collins, 517 F.3d 421, 431 (6th Cir. 2008); Mcveigh v. Smith, 872 F.2d 725, 727-28 (6th Cir. 1989). I have also been informed that procedures such as these do not implicate the Sixth Amendment. See, e.g., McVeigh, 872 F.2d at 727.

20.     Your affiant seeks to compare the DNA of FLORES obtained under the authority of this search warrant to any DNA obtained collected from the Smith &

Wesson pistol and its magazine and the Ruger pistol and its magazine recovered from the scene on September 27, 2024.

## CONCLUSION

21.    I submit that there is probable cause to issue the requested warrant. Based on these facts, I have probable cause to believe that FLORES violated 18 U.S.C. § 922(g)(1), felon in possession of a firearm, and a DNA sample from FLORES will yield evidence of his involvement of that offense.